OPINION OF THE COURT — by the
How. Chief Justice TURNER-
This cause comes before us, on an appeal from an interlocutory decree of the chancellor, dissolving the injunction for the want of equity on the face of the bill. The bill has not been answered. The cause has not been argued, but submitted without argument, and without an abstract or brief on either side.
On looking into the bill, we find that the defendant sued at law, on ac- *454 conni for work and labor, and the common money counts, in the 3effersoa circuit courts; and the cause was tried by jury, and verdict rendered in favor of the plaintiff at law, for 700 dollars, damages; that a motion fora new trial was overruled.
The bill charges that there was not a "scintilla” of evidence that the said James Norris had ever agreed to hire, or pay for the services of the slave claimed in the declaration, or that the said Griffin ever demanded the slave of Norris, or that Norris ever refused to deliver him.
The bill also charges that the judge who presided at the trial failed to charge the jury upon the law of the case, by which failure the jury rendered their verdict for the plaintiff and that the court, in delivering its opinion, on the motion for the new trial, stated that the verdict was against the law and the evidence in the case; yet, as the court believed the jury were governed by the equity of the case in their verdict, it would overrule the application for a new trial.
There are many other charges in the bill, shewing claims, some of a benevolent — some of a legal character, which the complainant set up in behalf of their intestate against said Griffin, but it does not appear that the defendant at law, filed, or, relied on their offsetts, if any they had; nor do they shew any reason for not making such defence. It would seem that they relied in the suit at law, on the illegality of the plaintiffs’ demand. This shows that the merits of the suit were then considered of a purely legal character, and the defence should have been made there; and we can perceive no ground laid for coming into a court of equity.
Even if we were sitting as a court of law, we could not say that the court erred in failing to charge the jury. The courtps not bound to charge the jury, unless called on todoso; and even if we could take cognizance of the motion for the new trial, we perceive nothing illegal in the opinion of that court; and, although the verdict was contrary to the strict principles of law, yet, as the verdict was an equitable one, the court would not set it aside. This is every day’s practice, sanctioned likewise by the most approved precedent.
At a previous day of the present term, this cause was dismissed on motion of defendant’s counsel; on account of the irregularity of taking the appeal — the want of the fiat of a judge, &c.; but on a subsequent day, the *455 parties consented to waive the irregularity of the appeal, and to bring the case before this court, as on a regular appeal, and to consider the'bill as demurred to, for want of equity on its face.
George Winchester, Esqr., for complainants ;
S. M. Grayson, Esqr., for defendant.
Asan appeal lies from the chancery court to this,in cases like the present, we are of opinion that the parties may waive the irregularity in taking it. This is a matter in which the court has jurisdiction; otherwise we would not take it by consent.
But we do not conceive that we have the power to do more. We would not suffer parties to institute an original suit in this court, and call it an appeal. Nor can we allow, in an appeal case, new matter to be introduced, which was not before the chancellor. If we were to do so, the case would not be one of appeal. It is the decision of the chancellor on a given state of facts which is complained of, and we are, as we may lawfully be, called on to determine whether the chancellor erred.
We desire to adhere strictly to our jurisdiction, and not to enlarge it by construction.
We have allowed the defendant to waive the irregularity in taking the appeal, and considered the cqse as if the appeaíhad been regularly taken. But we decline considering the bill as demurred to, as that would lead to a conclusion different from that produced by a simple affirmance of the judgment.
The decree of the chancellor, dissolving the injunction, is affirmed, and the cause remanded for further proceedings in the court below. ,
ARGUMENT OF GeO. WINCHESTER, Esa.
I know that the claim of the complainant to relief in chancery is founded in natural justice. I know, too, there are many rights founded in natural justice, that can neither be enforced in a Court of Law or a Court of Equity, although a Court of Equity derives its foundation in the necessity of an extraordinary tribunal to enforce rights founded in natural justice, where the ordinary comman law tribunals, from the modes of proceeding and the nature of its relief, is not competent to such end. But Equity itself can only relieve in conformity to, and consistent with law, and is not competent to establish or enforce imperfect ¡rights, ap they are denominated by *456 moral writers, however founded in natural right. After a decision of the Supreme Court, although not upon argument or briefs furnished, I should not attempt by any argument to effect an opposite decision, if I did not confidently believe that the claims of the complainant, which I cannot doubt, in the opinion of the Court is founded in natural justice, is also supported by principles which govern the decisions of Courts of Equity, and principles which, when fully and fairly presented and deliberately considered, the Court will think strictly applicable to this case. Beside, it was expressly understood by Mr. Grayson, that it was to be submitted upon brief and argument in writing, and I was not aware that he had submitted it upon its merits. To state the case: Mr. Norris’s representatives complain, that by a verdict and judgment at law, he is required io pay the defendant for the hire of a slave, simply because the slave was voluntarily left in his possession as administrator by a distributee, although he had never refused to deliver the slave upon demand of the distributee, nor had ever contracted for the hire of the slave. And that although the Judge considered the verdict against law and evidence, yet upon a motion for a new trial, he suffered the verdict to stand, and judgment to be rendered, upon the single ground that he thought the verdict was agreeable to equity, or perhaps agreeable to natural justice.
Upon this state of the case, I think the complainant entitled to relief upon a very clear principle in equity. But however doubtful it might be, if the case stopped here, the other ground stated in the bill depends upon a familiar principle.
The further state of the case is — what?
That Griffin, the distributee, left his child to be protected by the humanity and feelings of relationship in Norris. That Norris paid moneys for the benefit of Griffin, in discharge of his debts, and for the support of his wife and child, although not at his request, and therefore constituting no better a legal claim for re-payment than the claim of Griffin for the hire of the slave; but surely a claim equally, or rather more deeply founded in equity ,o in natural justice. This I think the Court will find a fair statement of the complainant’s claim to relief, and in the manner in which by agreement the case is presented to the Court for determination, the whole statement jg admitted to he true.
*457 Upon the first part of the case, this question is presented. Does the act of a judge at law refusing to grant a new trial upon a verdict admitted to be against law and evidence, upon the ground that the verdict is supported by equity or by natural justice, operate as a bar to the jurisdiction of a Court of Equity to reconsider that question?
It is not contended that a judgment at law is not conclusive upon the Court of Chancery in favor of the defendant, upon every fact and principle of law essential to constitute a legal judgment, or that a Court of Chan= eery can either re-investigate the facts, or review the errors of law upon which such judgments are founded.
But although judgments at law are conclusive upon Courts of Chancery, yet a Court of Chancery may relieve against such judgments, where they are founded in fraud, or where, though the legal right is correctly found to be in the party obtaining the judgment, there are grounds of equity upon which he ought to be decreed to surrender his legal right, or where the judgment is obtained upon a matter not coming exclusively within the jurisdiction of a Court of Law, but a matter properly cognizable in a Court of Equity. Courts of Equity originally exercised the sole jurisdiction of granting new trials at law upon the ground of injustice in the verdict. But since Courts of Law have exercised a liberality in granting new trials, Courts of Equity seldom interfere. But they will interfere to relieve against verdicts and judgments at law, upon matters clearly within the cognizance and jurisdiction of a Court of Chancery. True, the power of a Judge to grantor refuse a new trial at law, is reposed in the discretion of the Judge. But this discretion is a legal, not an arbitrary discretion, governed by strict rules, in the application of which, the life, the liberty, the property, all the rights secured by the Constitution and laws of the country to the citizen, are as much involved, as in any other proceeding in a Court of Justice.
No rule of law is better established, and none constitutes apart of the law of the land more solidly, than the rule that the judge is bound to grant a new trial, where a verdict is against law and evidence, unless the verdict be agreeable to equity. If the verdict be against law and evidence, yet if it he what a court of equity would decree, the discretion of a judge, is properly exercised in refusing a new trial, because it avoids nnneees- *458 sary and litigious delay, in granting a new trial, when, if another verdict should be obtained, of an opposite nature, relief would be ultimately given in chancery, consistent with the first verdict. But, beyond this, a judge, in the exercise of his discretion, has no right to proceed. He has no right to refuse a new trial, where the verdict takes away the rights of a citizen, neither sanctioned by the rules oflaw, nor the rules which authorize a decree in a court of chancery.
In this case, it is admitted that the judge refused a new trial, merely upon the belief that the verdict was agreeable to equity; in other words, that Norris, although not bound by law, would in equity be compelled to pay for the hire of the slave, while in his possession. The judgment wa3 rendered, then, entirely upon this matter of equity.
Is this decision of the judge, from which no appeal lies, which is not a legal decision, but made purely upon a matter of equity, made too summarily upon motion, where the opposite party had no opportunity to try his equitable rights upon the authorities which should determine them, where he was surprised by matter set up against him, not properly within the jurisdiction of a court oflaw, and where he could not be allowed the opportunity of offering to the court an opposing equity ? Is this decision upon a matter of purely equitable cognizance, to be conclusive upon a court of equity, where the jurisdiction properly belongs?
Norris was no more bound in a court of equity than in a court oflaw, to pay the hire of the slave. After the distribution, the right to the possession of the slave was fully vested in Griffin, the distributee. The distributee voluntarily permitted him, without any contract for hire, to remain in the possession of the administrator. It was not the duty of the administrator to go seek Griffin, throughout the world, to deliver him. Griffin had run away; but even had he been in the state, it was his duty to have demanded possession of the slave; and, had possession been refused, an implied contract for hire might have been sustained. But here was neither an express contract for hire, nor a demand and refusal. The negro was left in the possession of the administrator, not against the consent of Griffin, by the authority of the law, after distribution, as trustee — the only principle upon which an administrator can be made to pay interest, even for *459 ¡money in his hands* but left voluntarily, by the consent of the distributee, in his possession, after distribution.
He was plainly no more bound in a court of equity than in a court of law; and, assuredly, to take away from a citizen his property, without any principle of law, or any principle of equity to authorize it, where he has neither forfeited by any violation of law, nor done any act justifying or consenting to it, is not administering justice according to law; it is the exercise of the most arbitrary, tyrannic power, subversive of a fundamental principle of the republic, in the declaration of private rights contained in the constitution.
We cannot presume that the judge intended any such arbitrary exercise of power in deciding, upon his discretion, a matter of equity upon a summary motion; and that decision is no bar to the j urisdiction of a court, which has, by the constitution of the state, exclusive cognizance of all matters of equity.
Although courts of law may, in many instances, exercise equitable powers, the danger to the rights of parties, owing to the different modes of administering justice in courts of equity and law, and the incapacity of the latter to do full and complete justice to both parties, is strongly expressed in the first chapter of Mitford’s pleadings; to which I refer the court. In the first volume of Shoale & Lefroy’s reports, pages 205, 208, the principle is recognized for which I contend, as applicable to this case, in that equity will interfere where the matter decided and discussed at law, is not fully within th e, jurisdiction of a court of law, page 204 — “It is not sufficient to show injustice has been done under circumstances which authorize the court to interfere; because, if a matter has already been investigated, in a court of justice, according to the ordinary rules of investigation, a court of equity cannot take upon itself to enter into it again.” But was the obligation of the administrator in this case, to pay for the hire, by the principles of equity and natural justice investigated in the court of law?— Was it examined according to the ordinary rules of investigation? And, more especially, could the complainant have brought forward his defence, in a court of law, for moneys advanced for the benefit of the defendant? “There may be cases cognizable in law, and in a court of equity; and of which cognizance cannot be effectually taken at law, and, therefore, equity *460 does sometimes interfere.” It always interferes, in such cases, wheiti there is no fault in the party,-not making his defence at law.
But, upon the other ground, in this case, upon every principle of natural justice, and of equity, Norris ought to be allowed to setoff to the judgment obtained against him for hire, the moneys which he has paid for Griffin, though not at his request. It would be the most flagrant outrage upon his rights — the most shameful injustice, to say otherwise; an injustice that never stained the temples of justice in the most despotic governments of earth; one at which equity should blush, and change its name. The chancellor, in deciding this cause, felt great hesitation, and expressed his wish that it should be taken to the supreme court as involving a question well worth a serious consideration. I doubt not it will receive it, and cannot but think that, upon both grounds taken, the complainant will obtain relief against a wrong and injustice, which is too glaring not to be seen.
See 14 Johnson’s Reports, pages 63,76; set off peculiarly within the jurisdiction of a court of chancery, and, although refused in law, allowed afterwards in chancery. But, in this case, it was not, and could not be Set up at law.
7 Cranch, page 336, by Marshall:
“Without attempting to draw any precise line, to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments at law, it may be safely said that any fact which clearly proves it to be against conscience to execute a judgment, of which the injured party could not have availed himself at law, but was prevented by fraud, or accident unmixed with any fault or negligence, in himself or agents, will justify an application to a court of chancery.”
Couple this principle with the principle that a court of law had not full jurisdiction of the defendant’s equity, and had no jurisdiction of the complainant’s equity; and I have the utmost confidence that, in its application, in all its parts, the court will come to a conclusion, which, to my mind, seems irresistible, that the complainant is entitled to relief.
It is a fact, clearly against conscience, that Griffin should enforce a judgment for hire, due neither by law or equity. He could nofc *461 "avail himself of the fact that the hire was not due; he had not a full and fair hearing ofthe equity ofthe verdict, and it was owing to no fault ofhis. But assuredly, the fact that Norris had paid moneys for Griffin,'the payment of which he could not avail himself of at law, makes it wholly against conscience that the judgment should be enforced against him, without allowing those payments.